UNITED STATES DISTRICT COURT
EASTERN DISCTRICT OF NEW YORK
------------------------------------------------------------X

SAMUEL HARRINGTON & DUANE HENRY

        Plaintiffs,

                                        **AMENDED COMPLAINT**

                                        **JURY TRIAL**
                                        **DEMANDED**

CITY OF NEW YORK, et al.

                                        **INDEX NUMBER**
                                          **13CV02694 (RRM)(VVP)**

        Defendants,

------------------------------------------------------------X

## NATURE OF THIS ACTION

1. This action is brought by plaintiffs to recover damages for false arrest, retaliation for exercising first amendment rights, illegal search, excessive use of force, abuse of process, and respondent superior under Federal and New York State claims.

## THE PARTIES

2. Plaintiffs are residents of Brooklyn, New York

3. The City of New York is a municipal corporation whose residence is in all five counties of New York City.

4. Defendants, P.O. Frank Bulzoni, Shield 2681, P.O. Leonel Ramos, Shield 28782, Sergeant Michael Falk, Shield 608 individual defendants, are employees of the New York City Police department, upon information and belief, at the 71st precinct in Brooklyn.

5. Defendant, P.O. James Chung, arresting officer whose present address and shield number has not been provided by the City of New York. Upon information and belief, P.O. James Chung was a police officer working at the 71st precinct in Brooklyn but he is not working any more there.

6. Defendants P.O. Frank Bulzoni, Shield 2681, P.O. Leonel Ramos, Shield 28782, Sergeant Michael Falk, Shield 608 and P.O. James Chung, collectively are known herein and after as **Defendant Police Officers** and individually as **Defendant Police Officer**.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this district pursuant to 28 U.S.C. §1331 in that this action arises under the constitution and laws of the United States, among them 42 U.S.C § 1983

8. Venue is proper in this district pursuant 28 U.S. C. § 1391(c) in that the City of New York is deemed to reside in this jurisdiction.

## FACTUAL ALLEGATION UNDERLYING PLAINTFFS CLAIMS

### Events Involving Henry

9. On June 7, 2012 around 10:15 PM, Mr. Duane Henry was pulling his car in the driveway of 244 Sullivan Place. Mr. Henry had for purpose to visit one of

his friends. Right in front at 237 Sullivan Place, Mr. Duane observed that two police officers were beating a guy, E-side, who was laying on the floor.

10. Mr. Henry took out his cellphone and started recording the scene. The police officers were approximately 10 to 15 feet away from Mr. Henry. At that moment, a police officer pulled out a guy and started waving it aiming everyone who was in the scene. Other police officers also pulled out their guns. One of the police officers, **Defendant Police Officer**, with his gun out but not pointing Mr. Henry, approached Mr. Henry. **Defendant Police Officer** told Mr. Henry to stop and Mr. Henry complied. **Defendant Police Officer** grabbed Mr. Henry and grabbed the phone from Mr. Henry and told Mr. Henry to come to get the phone back. Mr. Henry did no approach **Defendant Police Officer**. Other two **Defendant Police Officers** were observing and did not prevent **Defendant Police Officer** from interfering with Mr. Henry's right to videotape police activity.

11. After police officers left, Mr. Henry went to Jhon Sanchez's apartment to filed a complaint to internal affairs.

12. Mr. Henry was scared because he had not only lost his cellphone but also because he could suffer harassment or prosecution for videotaping a police activity. Mr. Henry continued being scared for any police officer that may approach him. Mr. Henry said that he is so fearful that "If a cop say something, you don't talk back." (50H hearing Henry v. City of New York Claim 2012PI022610 at 37, Exhibit A)

## Events Involving Harrington

13. On June 7, 2012 around 10 PM, Mr. Harrington came out from the store on Sullivan Place and Rogers, when he observed some fireworks. Then the police came and starting to harass the people in the streets, grabbing them. Mr. Harrington approached to the middle of block to have a better view of the scene. Mr. Harrington observed how the police officers were beating up a person whose name is Omar a/k/a E-side. Later, the police officers arrested Omar.

14. Mr. Harrington took out his phone and starting recording the scene. He could not record very much because his cellphone batteries died.

15. People in the crowd told Mr. Harrington that the police had taken Mr. Henry's phone. Mr. Harrington went to the precinct with his friend Kian Meusa to claim Mr. Henry's cellphone. In the precinct, a police officer signaled Mr. Harrington as being Henry and in consequence of being the owner of the cellphone retained by the police. **Defendant Police Officer** put the handcuff on Mr. Harrington and arrested him. Mr. Harrington was charged with Resisting Arrest, Disorderly Conduct and Obstruction of Government Administration.

16. The police handcuffed Mr. Harrington very tightly causing some bruises in is wrist. Mr. Harrington did not look for medical attention for this.

17. Mr. Harrington was strip search by a male officer, **Defendant Police Officer**. This was unnecessary search and exaggerated response from the NYPD

because Mr. Harrington went to the precinct with the sole purpose to retrieve his friend's cellphone.

18. On June 9, 2012, Mr. Harrington's criminal charges were dismissed based on an adjournment in Contemplation of Dismissal. The case was not restored within six months after, so the accusatory instrument deemed to have been dismissed.

19. Mr. Harrington was arrested for 20 hours approximately.

20. Minutes after Mr. Harrington was arrested, Kian Meusa came to Jhon Sanchez's apartment and help to filed a claim to internal affairs.

21. After Mr. Harrington release, the City of New York returned both cellphones, Mr. Harrington's and Mr. Duane's. Mr. Harrington returned the cellphone to Mr. Duane. The videos for both cellphones were already provided to the City of New York in the Plaintiff's initial disclosures.

## FIRST CAUSE OF ACTION
## RETALIATION FOR THE EXERCISE OF FIRST AMENDMENT RIGHTS
## 42 U.S.C § 1983
## (Both plaintiffs)

22. Plaintiffs repeat and reallege the previous allegations as fully set forth herein.

23. Defendants retaliate against the plaintiff due to plaintiffs were videotaping a police activity. The arrest of Mr. Harrington and the seizure of the Mr. Henry's phone would deter similarly situated persons from exercising their first amendment rights.

24. As a result of the foregoing, plaintiffs have been damaged and demand compensatory and punitive relief.

## SECOND CAUSE OF ACTION
## ILLEGAL STRIP SEARCH
## UNDER SECTION 11 AND 12 OF THE NEW YORK CONSTITUTION
(Mr. Harrington)

25. Plaintiff repeats and realleges the previous allegations as fully set forth herein

26. Defendants acting under color of state law, illegally search plaintiff's body without probable cause for doing so.

27. As a result of the foregoing, Plaintiff has been damaged and demands compensatory damages and punitive relieve.

## THIRD CAUSE OF ACTION
## FAILURE TO PROTECT PLAINTFF RIGHTS
## 42 U.S.C § 1983
(Both Plaintiffs)

28. Plaintiffs repeat and realleges the previous allegations as fully set forth herein

29. **Defendant Police Officers** had a duty to intercede and prevent that Mr. Harrington were arrested and that **Defendant Police Officer** interfere with Mr. Henry exercise of this first right of videotaping police activity.

30. As a result of the foregoing, Plaintiffs have been damaged and demand compensatory and punitive relief.

## FOURTHT CASUE OF ACTION
## FAILURE TO INSTRUCT, SUPERVISE AND CONTROL DIRECTED CONGNIZABLE UNDER MONNEL AND 42 U.S.C 1983
(By all plaintiffs and against the CITY OF NEW YORK)

31. Plaintiffs repeat and realleges the previous allegations as fully set forth herein.

32. At all times relevant to this complaint, defendants as officer of the City of New York Police Department, were acting under the direction and control of the City of New York which acted through its agents and employees who

were responsible for making policy of the police department, its officers and operations, and the individually named defendants were acting pursuant to either official policy of the practice, custom and usage of the City of New York and its Police Department.

33. Acting under color of law, by and through the policy makers of the City of New York and pursuant to official policy or custom and practice, the City of New York intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the City of New York, failed to instruct, supervise, control and /or discipline, on a continuing basis, Defendants in the performance of their duties to refrain from

34. excessive of force during an arrest

35. preventing people from exercising their first amendment rights, who videotape police activity.

36. retaliating against people for exercising their first amendment rights.

37. arresting people without probable cause

38. performing strip searches for misdemeanor arrests

39. The City of New York had knowledge or should have had knowledge that the wrongs that were done, heretofore alleged, or other unlawful or unconstitutional acts were going to be committed. The City of New York had power to prevent the commission of said wrongs, could have done so, and intentionally knowingly, or with deliberate indifference to the rights of the inhabitants of the City of New York failed to do so.

40. As a result of the foregoing, plaintiff, Mr. Harrington was deprived of the following rights: the right to exercise the first amendment freedom to videotape police activity; rights to be secured in his person, against unreasonable seizure of his person and against the excessive of force in violation of the Eighth, Fourth and Fourteenth Amendment of the Constitution and 42 U.S.C. § 1983 and has been damaged.

41. As a result of the foregoing, plaintiff, Mr. Henry was deprived of the right to exercise his first amendment freedom to videotape policy activity and has been damaged.

FIFTH CAUSE OF ACTION
ABUSE OF PROCESS
UNDER 42 U.S.C .§ 1983 AND STATE LAW
(Both Plaintiffs)

42. Plaintiffs repeat and realleges the previous allegations as fully set forth herein

43. Assuming that Mr. Harrington was Mr. Henry, Defendants (1) used the criminal procedure against Mr. Harrington to prevent him to use the videotapes in complains before the Internal Affairs Bureau, the CCRB or in any publication, (2) with the intention to cause harm in the person of Mr. Henry, person who the defendant saw videotaping and (3) with the collateral objective to deter people in the neighborhood from videotaping police activity.

44. As a result of the foregoing, Plaintiffs have been damaged and demand compensatory and punitive relief.

<u>SIXTH CAUSE OF ACTION</u>
<u>FALSE ARREST AND IMPRISONMENT</u>
<u>UNDER U.S.C.§ 1983 AND NEW YORK STATE LAW</u>
(Mr. Harrington)

45. Plaintiff repeats and realleges set fort in all preceding paragraphs

46. Plaintiff was held and imprisoned against their will; they were of the confinement and it was not otherwise privileged because there was no probable cause that Mr. Harrington had committed a crime.

47. As a result of the foregoing, Plaintiff has been damaged and demand compensatory and punitive relief.

48. **By virtue of the foregoing**, Plaintiffs have been damaged

**WHEREFORE,** Plaintiffs demand as follows:

a. Compensatory damages;

b. Punitive damages;

c. Cost of suit and attorneys fees pursuant to 42 U.S.C. § 1988

d. Such other relief as the Court may deem just and proper

Dated: New York , New York
October 13, 2013

_____
JHON SANCHEZ, (JS 1850)
Attorney for Plaintiffs
219 Sullivan Place # C2
Brooklyn, NY 11225
(347) 405 54 31

# EXHIBIT A

Page 37

D. Henry

A   Emotional.

Q   Can you explain?

A   I just -- I have this thing, like, if I see a cop, I'm scared, you know. If a cop talk to me, I feel different, you know.

Q   Prior to the incident, when you saw a cop, would you feel scared?

A   All the time.

Q   Before the incident?

A   After.

Q   After the incident.

A   Yeah.

Q   Before the incident when you saw a cop, did you feel scared?

A   No. It's regular, you know. I look at you the same way you look at me, but after that, it was, you know.

Q   Any other ways in which the incident has affected you?

A   Any other ways?

Q   Yes.

A   If a cop say something, you don't talk back.

Q   Okay. Before, when you would interact